IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THERESA BALDERAS, LEONARDO LEO BALDERAS, AND JOSHUA BALDERAS, | § § § § | 5-16-CV-00239-OLG-RBF |
| *Plaintiffs*, | § § § | |
| vs. | § § § | |
| SOUTHSIDE INDEPENDENT SCHOOL DISTRICT AND JULIAN DE LA ROSA GONZALES, JOHNNY CANTU JR., MANUEL SANDOVAL, JR., KENNETH BOULDIN JR., AND MARY BANDY, MELONIE IGLEHART-HAMMONS, IN THEIR INDIVIDUAL CAPACITIES | § § § § § § § § | |
| *Defendants*. | | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the 12(b)(6) Motion to Dismiss Plaintiffs'

Fourth Amended Original Complaint for Failure to State a Claim Upon Which Relief Can Be

Granted, filed by Defendants Southside Independent School District ("SISD") and individual

Defendants Julian de la Rosa Gonzales, Johnny Cantu, Jr., Manuel Sandoval, Jr., Kenneth

Bouldin, Jr., Mary Bandy, and Melonie Iglehart-Hammons, in their individual capacities. Dkt.

No. 19. In this First Amendment retaliation case, the District Court previously dismissed all

claims against the individual defendants in their official capacities. *See* Dkt. No. 9 at 14 n.7.

All pretrial matters in this case were referred to the undersigned for disposition pursuant

to Western District of Texas Local Rules CV-72 and 1(c) and (d) to Appendix C, Dkt. No. 23,

and this motion was specifically re-referred to the undersigned, Dkt. No. 32.[1] The undersigned

has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After considering Defendants' Motion, Dkt. No. 19, the Response filed by Plaintiffs

Theresa Balderas, Leonardo "Leo" Balderas, Jr., and Joshua Balderas (collectively, "the

Balderases"), Dkt. No. 27, the Reply filed by Defendants, Dkt. No. 28, the case file, and the

relevant law, the undersigned recommends that the District Court **GRANT IN PART AND**

**DENY IN PART** Defendants' Motion to Dismiss, Dkt. No. 19, as follows: Theresa and Leo

Balderas's First Amendment retaliation claims should survive the Motion to Dismiss in their

entirety. Joshua Balderas's First Amendment retaliation claims against the individual board-

member Defendants Julian de la Rosa Gonzales, Johnny Cantu, Jr., Manuel Sandoval, Jr., and

Kenneth Bouldin, Jr., should also survive. Joshua Balderas's claims against SISD and interim

superintendents Bandy and Iglehart-Hammons, however, should be dismissed.

To further clarify, the undersigned's analysis can be broken down according to the Rule

12(b)(6) arguments advanced by the various Defendants, as discussed in greater detail in this

report and recommendation, as follows:

- *Municipal liability of SISD.* Theresa and Leo Balderas's First Amendment retaliation claims survive SISD's Rule 12(b)(6) municipal-liability arguments. Joshua Balderas's claims against SISD do not.

- *Qualified immunity of the individual board-member Defendants*. All three of the Balderases' claims against SISD board members Julian de la Rosa Gonzales, Johnny Cantu, Jr., Manuel Sandoval, Jr., and Kenneth Bouldin, Jr. survive the individual board members' arguments on qualified immunity.

- *Qualified immunity of interim superintendents Bandy and Iglehart-Hammons*. Joshua Balderas's claims against former SISD interim superintendents Mary Bandy and Melonie Iglehart-Hammons (only Joshua Balderas asserts claims against the interim

---

[1] The case was initially assigned to Magistrate Judge John W. Primomo but was administratively reassigned to the undersigned's docket upon Judge Primomo's retirement.

superintendents[2]) fail because he cannot overcome the interim superintendents' arguments for qualified immunity.

- *Causation as to the individual board-member Defendants and SISD.* All three of the Balderases' claims survive the individual board members' arguments on causation. Theresa and Leo Balderas's claims also survive SISD's causation arguments. Joshua Balderas's claims do not survive as to SISD. He has not alleged facts capable of showing that any alleged adverse employment action he suffered resulted from action attributable to SISD. His retaliation claim against SISD therefore fails on this basis as well as on municipal-liability principles.

- *Causation as to Joshua Balderas's claims against Bandy and Iglehart-Hammons.* Joshua Balderas's claims also cannot survive the causation arguments of Defendants Bandy and Iglehart-Hammons. Thus, his claims against them should be dismissed for this reason as well as on qualified-immunity grounds.

## I.      Factual and Procedural Background

This First Amendment retaliation case is brought by three current and former SISD employees who are all members of the same family. They allege they suffered retaliation in response to their open opposition to a faction of the SISD Board of Trustees that supported former Interim Superintendent Dr. Joe E. Gonzales during the May 9, 2015 school-board election (hereafter referred to as the "Gonzales faction"). The Balderases allege, by way of 42 U.S.C. § 1983, violations of their First Amendment rights of free speech and association.

The Balderases initiated this action on March 8, 2016 against SISD, members of its Board of Trustees Julian de la Rosa Gonzales, Johnny Cantu, Jr., Manuel Sandoval, Jr., Kenneth Bouldin, Jr., and former SISD interim superintendents Mary Bandy and Melonie Iglehart-Hammons, in both their official and individual capacities. *See* Dkt. No. 1. Shortly thereafter, the Balderases amended their complaint, with leave of court. *See* Dkt. Nos. 4, 5. Defendants then moved to dismiss the Balderases' claims in their entirety. They raised several arguments, including that the claims against the individual Defendants in their official capacities were

---

[2] *See* Resp. ¶ 31 (explaining that Theresa and Leo Balderas do not assert claims against Bandy and Iglehart-Hammons).

redundant of the claims against SISD. The individual Defendants, they argued, were entitled to qualified immunity on the individual-capacity claims. And Defendants further argued that the Balderases failed to plead a viable retaliation claim and, even if they had done so, the allegations in any event did not suggest alleged constitutional violations resulting from an "official policy or custom" of SISD, as would be needed to hold SISD liable under principles of municipal liability. *See* Dkt. No. 6. On August 24, 2016, the District Court ruled that the Balderases had failed to state a claim upon which relief could be granted. The Court, however, permitted the Balderases to amend their pleadings, except as to their claims against the individual Defendants in their official capacities. *See* Dkt. No. 9, at 14 & n. 7. The Balderases have now amended their complaint three times in the wake of the District Court's August 24, 2016 order. *See* Dkt. Nos. 9, 10, & 16.

On April 25, 2017, Defendants moved to dismiss the Balderases' Fourth Amended Complaint. *See* Dkt. No. 19. Defendants, in their Motion to Dismiss, argue the Balderases have again failed to plead claims upon which relief may be granted. In particular, Defendants argue that the Balderases' allegations, even if taken as true for purposes of Rule 12(b)(6), could not establish that: (1) the alleged constitutional violations were the product of a SISD policy or custom sufficient to impose municipal liability against SISD; and (2) the individual Defendants sued in their individual capacities could be subject to liability notwithstanding their entitlement to qualified immunity. *Id.* In their Reply, Defendants argue the Balderases' claims also fail because they failed to plead facts that, even if true, could provide the necessary causal link between the Balderases' engagement in protected First Amendment activity and any alleged act(s) of retaliation. *See* Dkt. No. 28.

On May 15, 2017, Magistrate Judge John W. Primomo recommended that the case be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure because the Balderases failed to respond timely to Defendants' motion to dismiss, despite having enjoyed multiple opportunities to amend their complaint. *See* Dkt. No 25. That same day, the Balderases filed their Response, *see* Dkt. No. 27, along with objections to Judge Primomo's recommendation, arguing that their delay was due to a scheduling error, *see* Dkt. No. 29. In light of these filings, the District Court vacated the memorandum and recommendation, accepted the Balderases' Response as timely filed, Dkt. No. 27, and re-referred the case, including the instant motion. *See* Dkt. No. 32.

The undersigned now considers the merits of Defendants' Motion to Dismiss the Balderases' Fourth Amended Complaint.

## II.     Legal Standards

In reviewing a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)). But a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

A court's review of a motion to dismiss is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court may take judicial notice of matters of public

record. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007). The Balderases have attached various exhibits to their Response, Dkt. No. 27, such as deposition excerpts and re-assignment letters, which purportedly provide evidentiary support for their arguments. Such evidence generally should not be considered in evaluating the merits of a motion to dismiss, and it will not be considered here. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (refusing to consider additional evidence or pleadings in evaluating plaintiff's challenge to the district court's 12(b)(6) dismissal because "our review is limited to the complaint and proper attachments").

The individual Defendants have raised qualified-immunity arguments of a type that could, in limited circumstances, permit the Court to consider limited discovery, but that is not the case here. Before such evidence can play a role at this stage in proceedings, a plaintiff "must first 'support[ ] his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'" *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc)). As discussed below, Joshua Balderas has not met this standard with respect to his claims that are subject to the qualified-immunity defense of Defendants Bandy and Iglehart-Hammons. His other claims against the individual board-member Defendants are entitled to proceed and evidence need not be considered in reaching that conclusion. The same is true for Theresa and Leo Balderas's claims against the individual board-member Defendants. In any event, the evidence submitted appears to address a different issue—whether SISD may be subject to municipal liability. Finally, Defendants do not submit any evidence on the issue of qualified immunity and, in fact, object to the Court's consideration of any evidence submitted by the Balderases. *See* Repl. at 2. Accordingly, no evidence need be considered here.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the allegations must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III.   Analysis

*SISD's Municipal Liability*. Taking the allegations in the live complaint as true, Theresa and Leo Balderas have alleged facts sufficient to survive SISD's Rule 12(b)(6) arguments on municipal liability. Joshua Balderas has not.

To state a claim upon which relief may be granted for municipal liability against a local government entity, like SISD, the three Balderases must allege facts that, if taken as true, reflect that an official policy was the "moving force" behind the alleged constitutional violations. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). In other words, "a municipality cannot be held liable solely because it employs a tortfeasor . . . on a respondeat superior theory." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215 (quoting *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978)). "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations," but may also be evidenced by a custom that is "'a persistent, widespread practice,' by municipal officials or employees, which 'although not

authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1983) (en banc)). Defendant SISD takes issue with all three of the Balderases' claims on the grounds that the live complaint does not allege facts that could, if taken as true, reflect an adverse employment action against the Balderases undertaken pursuant to an official SISD policy.

The Balderases argue that the following facts alleged in the live complaint would, if true, suffice to show they suffered adverse employment actions pursuant to an official SISD policy: (1) former interim superintendents Dr. Gonzales, Bandy, and Iglehart-Hammons acted pursuant to authority delegated to them by SISD's board of trustees when they demoted Theresa and Leo Balderas and terminated Leo and Joshua Balderas, Resp. ¶¶ 24-26 (citing Fourth Amend. Compl. ¶¶ 23-24, 28-29); (2) the board of trustees took official board action when five of its members announced the school district's intent to take adverse employment actions against a group of 20 employees, including the Balderases, and provided interim superintendent Dr. Gonzales with a "hit list" setting forth the employees they wanted to terminate, demote, and reassign, *id.* ¶¶ 23-24 (citing Fourth Amend. Compl. ¶¶ 21, 23); and (3) the board, at a lawfully convened meeting on December 3, 2015, ratified adverse actions taken by the interim superintendents. *Id.* ¶ 28 (citing Fourth Amend. Compl. ¶ 30).

The first of these contentions—that the interim superintendents acted as final policymakers because they acted pursuant to authority delegated to them by the board—lacks merit. The Balderases mistake the delegation of *decision-making* authority with the delegation of *policymaking* authority, the latter of which would be required here to hold SISD liable under municipal-liability principles. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993),

*aff'd*, 491 U.S. 701 (1989) (distinguishing the delegation of decision-making authority with respect to individual employee transfers from delegation of policymaking authority regarding employee transfers).

"'[W]hether a particular official has 'final policymaking authority' is a question of state law.'" *Jett*, 491 U.S. at 737 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). Texas law unequivocally delegates to the board of trustees "the *exclusive* power and duty to govern and oversee the management of the public schools of the district." Tex. Educ. Code. § 11.151(b) (emphasis added); *see also Rivera v. Houston Indep. Sch. Dist*., 349 F.3d 244, 248 (5th Cir. 2003). "Nothing in the Texas Education Code purports to give the Superintendent any policymaking authority or the power to make rules or regulations." *Jett*, 7 F.3d at 1245.

The Balderases also fall short when they point to allegations in their live complaint that Theresa and Leo Balderas's reassignment notices specifically explained that former interim superintendent Dr. Gonzales imposed the adverse employment actions "pursuant to the authority delegated to him by the Defendant Board of Trustees." *See* Resp. ¶¶ 24-25 (citing Fourth Amend. Compl. ¶¶ 23-24). The same is true with respect to the live complaint's allegation that Joshua Balderas's termination "was at the direction of the Gonzales school board faction by direct delegation of authority at the board meeting where they appointed [Mary Bandy and Melonie Iglehart-Hammons] as Joint-Interim Superintendents." *Id.* ¶ 26 (citing Fourth Amend Compl. ¶ 29). These allegations reflect, at most, decision-making; they do not reflect policymaking or the delegation of policymaking authority. Nothing in the Fourth Amended Complaint references a single action taken by the board of trustees to delegate *policymaking* authority to the interim superintendents.

The Balderases' second primary argument—that there could be action pursuant to an official policy here because the adverse employment actions resulted from official actions that were somehow undertaken only by the Gonzales faction of the board of trustees—is similarly without merit. Under Texas law, "[u]nless authorized by the board, a member of the board may not, individually, act on behalf of the board." Tex. Educ. Code Ann. § 11.051 (a-1). Moreover, "[t]he board of trustees may act only by majority vote of the members present at a meeting held in compliance with Chapter 551, Government Code, at which a quorum of the board is present and voting." *Id.* The Balderases have not alleged that any of the alleged adverse employment actions resulted from an official board vote, or that any individual board member was authorized to act individually on behalf of the board. Rather, as alleged, the initial adverse actions about which the Balderases complain appear to have been perpetrated by rogue individual board members without a majority vote. *See, e.g.*, Fourth Amend. Compl. ¶ 21 (alleging that the five individual board members announced their intent to terminate "20 or so" employees without the posting of an agenda or apprising the public in violation of the Texas Open Meetings Act); *id.* ¶ 23 (alleging that "Dr. Gonzales will testify that he was directed to take [adverse employment] action [against Theresa Balderas] by *the individual* Defendant board members") (emphasis added).

The Balderases' third primary argument yields a different result, at least as to Theresa and Leo Balderas. Theresa and Leo Balderas have alleged facts that, if taken as true, outline that the board ratified their demotions. This is sufficient to overcome the municipal-liability arguments SISD raises here. *See, e.g.*, *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 225 (5th Cir. 1999) (board's affirmation at a grievance hearing of superintendent's decision to transfer plaintiffs was an act that "'may fairly be said to represent official policy' because of the

Board's status as a policy maker") (quoting *Doe*, 153 F.3d at 215). Specifically, Theresa and Leo Balderas allege that, following their demotions in June and July 2015, they filed a grievance against SISD, as well as against the individual board members, contesting the adverse employment actions taken against them. Fourth Amend. Compl. ¶ 30. Theresa and Leo Balderas allege they then presented their grievance to the board at a December 3, 2015 meeting to provide the board with an opportunity to "rectify their unconstitutional acts." *Id.* The board, however, allegedly either outright denied their grievance or refused to consider it. *Id.*

By alleging that the grievance presented the board an opportunity to "rectify their unconstitutional acts," the live complaint sufficiently alleges, albeit via implication, that the board had notice in the grievance proceedings of the alleged improper retaliatory basis for the adverse employment actions.[3] Although conclusory allegations are alone insufficient to overcome a Rule 12(b)(6) motion, inferences such as these are properly drawn in a plaintiff's favor in this setting. *See Iqbal*, 556 U.S. at 678. Accordingly, the live complaint is properly read to allege that the board acted as a policymaker by ratifying the adverse actions against Theresa and Leo Balderas in ignoring or outright denying their grievance, all with knowledge of the alleged retaliatory motive for those adverse employment actions. These allegations, taken as true, survive SISD's arguments that Theresa and Leo Balderas have not stated a municipal-liability claim upon which relief may be granted. *See Beattie*, 254 F.3d at 604; *Harris*, 168 F.3d at 225.

---

[3] *C.f. Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) ("Without a showing that the board had actual knowledge of the alleged improper basis of Jones's and Acton's recommendation, the board cannot be liable for the alleged retaliation."); *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) ("[U]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom.").

Joshua Balderas, in contrast, alleges that he did not suffer an adverse employment action until a year-and-a-half later, when he received a notice of termination dated November 12, 2016. *See* Fourth Amend. Compl. ¶ 29. Accordingly, Joshua Balderas's termination by interim superintendents Bandy and Iglehart-Hammons could not have been the subject of the grievance presented at the December 2015 board meeting. And Joshua Balderas does not allege that he ever presented a grievance to the board in which he protested his termination by Defendants Bandy and Iglehart-Hammons or any other adverse employment action. Because Joshua Balderas has failed to allege facts sufficient to survive SISD's municipal-liability arguments, his claims against SISD should be dismissed on that basis.

*Qualified Immunity*. Government officials sued in their individual capacities may assert the defense of qualified immunity. All three Balderases assert individual-capacity claims against the individual board members. Only Joshua Balderas asserts additional individual-capacity claims against former interim superintendents Bandy and Iglehart-Hammons. *See* Resp. ¶ 31.

The Balderases have alleged facts that, if taken as true, describe claims sufficient to overcome the individual board members' arguments that they are shielded by the defense of qualified immunity. Former interim superintendents Bandy and Iglehart-Hammons, however, raise arguments for qualified immunity that Joshua Balderas does not overcome. His claims against them should be dismissed.

In assessing a defendant's entitlement to qualified immunity, a court determines whether the plaintiff has "'alleged the violation of a clearly established constitutional right.'" *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993) (quoting *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v.*

*Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Brigg*s, 475 U.S. 225, 343, 341 (1986)). Thus, a court must look not only for allegations supporting a violation of a clearly established constitutional right, it must also evaluate whether the defendant's alleged conduct was "objectively reasonable." *Id.* Even if the violation of a clearly established constitutional right is alleged, the official enjoys qualified immunity if the official's conduct was objectively reasonable. *Id.* (citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993)).

Once a defendant raises qualified immunity, the burden shifts to the plaintiff to plead "'specific facts that, if proved, would overcome the individual defendant's immunity defense.'" *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992) (quoting *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988)). "[C]omplaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Id.*

The Balderases allege in their live complaint that the individual board-member Defendants in this action engaged in a campaign to demote and ultimately terminate employees like them who openly opposed the board's Gonzales faction in the May 2015 election. *See* Fourth Amend. Compl. ¶¶ 18, 20, 23, 24. In furtherance of this mission, the Balderases allege, the individual board members together personally provided a "hit list" to former interim superintendent Dr. Gonzales that identified all SISD employees, including the Balderases, they wanted to terminate, demote, and reassign because of their open stance during the election. *Id.*¶ 23. Contrary to Defendants' assertions, these are more than conclusory allegations. Moreover, "[a]t the time of the alleged violation of [the Balderases'] free speech [and association] rights, both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech [and association]." *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). Defendants do not dispute that the Balderases'

alleged speech or association concerned a matter of public concern. And intentionally targeting an employee for termination or demotion for engaging in activities protected by the First Amendment is not objectively reasonable. *Id*. Accordingly, accepting the allegations as true (as the Court must at this preliminary stage), all three of the Balderases have alleged facts sufficient to overcome the individual board-member Defendants' arguments for qualified immunity.

Joshua Balderas, the only plaintiff to assert claims against Defendants Bandy and Iglehart-Hammons in their individual capacities, *see* Resp. ¶ 31, cannot overcome Bandy and Iglehart-Hammons's qualified-immunity arguments. In his Response, Joshua Balderas argues that Bandy and Iglehart-Hammons retaliated against him for exercising his First Amendment right to support the candidate of his choice. *Id*. ¶ 34 (citing Fourth Amend. Compl. ¶¶ 20, 33, 34). He further argues that Bandy and Iglehart-Hammons acted in an objectively unreasonable manner when they directed SISD to re-open an investigation against him that had previously been reviewed by the prior superintendent, Richard Vela, and when they then allegedly used the results of that new investigation to justify his termination. *Id*. ¶ 35 (citing Fourth Amend. Compl. ¶¶ 28). The allegations in the live complaint, however, are not nearly as favorable to Joshua Balderas's claims as are the Response's characterizations of those allegations.

According to the Fourth Amended Complaint, Bandy and Iglehart-Hammons allegedly re-opened the investigation against Joshua Balderas "to create a pretext for taking adverse employment action." Fourth Amend. Compl. ¶ 28. According to the live complaint, it can therefore "be inferred from the[se] facts that the reason that Defendants Bandy and Iglehart-Hammons took action against Plaintiff Joshua Balderas . . . was to curry favor with the Gonzales faction for consideration when they applied for the full-time superintendent's position." *Id*. ¶ 29. The shortcoming with these allegations, from Joshua Balderas's perspective, is that they provide

no insight into whether his protected activities were or even could have been a *substantial* or *motivating factor* in Bandy and Iglehart-Hammons' actions. Indeed, the live complaint alleges that Bandy and Iglehart-Hammons's motive was pure self-interest *unconnected to* the alleged protected activity; they wanted to curry favor so they would get a full-time position. *Id.* ¶ 29. A First Amendment retaliation claim requires allegations that, if proven, would show that the plaintiff's exercise of protected rights, not some other reason, was a substantial or motivating factor for the adverse employment action. *See Pierce v. Texas Dep't of Crim. Justice*, 37 F.3d 1146, 1149 (5th Cir. 1994). After many opportunities to amend the complaint, the allegations in the live complaint do not support a connection between the adverse employment action against Joshua Balderas and any retaliatory motive on Bandy and Iglehart-Hammons's part and in fact, undermine any inference of a connection. In short, he alleges they were looking for a promotion, not to retaliate. There is nothing in the live complaint suggesting that they knew Joshua Balderas engaged in any protected activity, or that they shared any alleged retaliatory motive attributable to the individual board members with whom they sought to curry favor for their own self-interested reasons.

Moreover, simply re-opening an investigation in the manner alleged here is not on its face objectively unreasonable, as Joshua Balderas contends. Although prior superintendent Vela previously determined that Joshua Balderas had not committed any wrongdoing, it does not follow—without some other sufficiently corroborating allegation—that every reasonable mind would agree with that conclusion under these circumstances. *See Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) ("A government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights.").

Given that Joshua Balderas has enjoyed ample opportunities to re-plead, up through and including the current Fourth Amended Complaint, it is the view of the undersigned that his claims against Bandy and Iglehart-Hammons for First Amendment retaliation should be dismissed for failure to state a plausible claim for the violation of a clearly established constitutional right. *See Pierce*, 37 F.3d at 1149; *see also Baker*, 75 F.3d at 197 (recognizing that in some instances, a "12(b)(6) dismissal on the grounds of qualified immunity" may be permitted where "supported by the allegations of the complaint itself") (quotation marks and citations omitted). And, as explained below, because Joshua Balderas's claims against Bandy and Iglehart-Hammons also lack a factual basis capable of showing a requisite causal link, there is a further basis to dismiss these claims.

*Causation.* In their Reply, Defendants argue that the Balderases' claims fail because a necessary causal link between the Balderases' protected First Amendment activity and any alleged act(s) of retaliation is missing from the allegations in the live complaint. *See* Dkt. No. 28. Defendants' failure to fully raise and brief this issue in their motion (as opposed to in their Reply) means the Court could refuse to consider the argument. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."). Nevertheless, because this issue could be raised in objections to this recommendation that may later be filed and perhaps also in a motion for judgment as a matter of law, the undersigned believes the interests of judicial economy merit addressing the issue on its merits here. Importantly, the Balderases cannot complain of a lack of notice should the Court entertain the causation argument now. Defendants originally raised the argument in their motion to dismiss the Balderases' First Amended Complaint. *See* Dkt. No. 6 at 8-9. In granting that motion, the District Court put the Balderases on notice that their allegations in the First Amended Complaint

"failed to establish a causal connection between any protected activity and the adverse employment outcomes they allege." Dkt. No. 9 at 10-11. The Balderases also affirmatively argue in their Response that their allegations as pled in the live complaint reflect the requisite causal link. *See* Resp. ¶¶ 15-17. Accordingly, the undersigned will turn to the merits of the causation issue.

Theresa and Leo Balderas have alleged facts that, if taken as true, would support a causal link between their protected activity during the May 2015 election, the alleged retaliatory adverse employment actions by the individual board-member defendants that followed shortly thereafter, and the alleged ratification of those actions by the board in a grievance proceeding at the end of 2015. Joshua Balderas has also alleged facts sufficient to support a causal connection between his protected activities and the alleged adverse employment action he suffered, at least as to the individual board members. He has not, however, alleged facts sufficient to overcome SISD and Defendants Bandy and Iglehart-Hammons' arguments on causation.

To successfully state a plausible claim for First Amendment retaliation, a plaintiff must allege a causal connection between protected activity and an adverse employment action. *See Jordan v. Ector Cty.*, 516 F.3d 290, 295 (5th Cir. 2008). If a plaintiff cannot allege facts that, if true, would directly establish that the defendant possessed a retaliatory motive, causation may be alleged and ultimately proven by either a close temporal proximity between the protected activity and the adverse employment action or "a chronology of events from which retaliation may plausibly be inferred." *Mooney v. Lafayette County Sch. Dist.*, 538 Fed. App'x 447, 454 (5th Cir. 2013); *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997).

Defendants urge dismissal on the ground that, generally, the Balderases have alleged no well-pleaded facts showing that any Defendant was aware of the Balderases' protected activities.

More specifically, Defendants argue that the Balderases' claims, as alleged, would not permit a finding of the close-in-time temporal proximity that could show the requisite causal connection. *See* Repl. ¶ 4.

Defendants' causation arguments, at this Rule 12(b)(6) stage, are particularly unavailing as to Theresa and Leo Balderas, who present a chronology of events in the live complaint from which causation may plausibly be inferred. *See Mooney*, 538 Fed. App'x at 454. Although Theresa and Leo Balderas did not actually suffer a loss in pay until more than a year after they allegedly engaged in protected activities, they received notices of demotion only two months after the May 2015 election. *See* Fourth Amend. Compl. ¶¶ 23-24. Shortly after receiving these notices, they filed on June 30, 2015, a grievance in which they challenged the notices. *Id.* ¶ 30. Then, on December 3, 2015, Theresa and Leo Balderas presented their grievance to the board at a school board meeting, and advised the board "that this was their opportunity to rectify their unconstitutional acts." *Id.* The board, in turn, either outright denied the two Balderases' grievance or refused to consider it. *Id.* Thus, it is reasonable to infer from Theresa and Leo Balderas's chronology of allegations in the live complaint that their protected activities were a substantial or motivating factor in the adverse employment actions they allege they suffered. *See Mooney*, 538 Fed. App'x at 454; *see also Matthews v. High Island Indep. School Dist*., 991 F. Supp. 840, 846 (S.D. Tex. 1998) (plaintiffs who alleged that the school district notified them that their contracts were not being renewed just over two months after they filed their grievance pled sufficient facts to support a prima facie claim for Title VII retaliation).

The retaliation claim of Joshua Balderas, however, presents a closer call—but survives Rule 12(b)(6)—on causation with respect to the individual board-member Defendants. Joshua Balderas, however, fails to plausibly allege causation as to SISD and Defendants Bandy and

Iglehart-Hammons (and, as discussed above, his claims against SISD as well as Defendants Bandy and Iglehart-Hammons also respectively falter under municipal-liability and qualified-immunity principles).

Conclusory allegations or assertions of retaliation do not satisfy *Iqbal*, *Twombly*, and their progeny, which require allegations in a complaint to outline a claim that is plausible on its face, including as to the element of causation in the retaliation context. *See Richards v. JRK Property Holdings*, 405 Fed. App'x 829, 830 (5th Cir. Dec. 20, 2010) (affirming dismissal of Title VII discrimination and retaliation claims that were not plausible on their face); *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 831 (E.D. La. 2012) (dismissing Title VII retaliation claim for failure to plausibly allege causal connection between protected activity and adverse employment action); *Phillips v. United Parcel Serv.*, No. 3:10–CV–1197–G–BH, 2011 WL 2680725, *8 (N.D. Tex. Jun. 21, 2011) (dismissing Title VII retaliation claim when plaintiff failed to allege facts giving rise to plausible claim of causal connection between protected activity and adverse employment action). While it is true that the chronology of events outlined in the live complaint presents a year-and-a-half gap between Joshua Balderas's participation in protected activities and the alleged adverse employment action he suffered, Defendants' arguments that focus exclusively on the length of this gap do not consider that causation can adequately be alleged by pleading facts that, if proven, would more directly show a retaliatory motive. *See Carlow v. Rivera*, No. 2:12-CV-00146, 2013 WL 3323148, at *8 (S.D. Tex. Jul. 1, 2013) (recognizing, in the summary judgment context, that a one-year delay between the protected activity and adverse employment action would be too long to establish causation if it were the only evidence offered, but finding a genuine issue of material fact existed on causation

because a jury could infer from an email that defendant was aware of and resented plaintiff's remarks several months after she made them).

According to the Fourth Amended Complaint, Joshua Balderas was not terminated until November 12, 2016, which is a year-and-a-half after he allegedly engaged in protected activity. *See* Fourth Amend. Compl. ¶ 29. Unlike Theresa and Leo Balderas, who were issued notices of demotion two months after the election, Joshua Balderas does not allege that an adverse employment action was taken against him until his November 2016 termination. And, because Joshua Balderas's November 2016 termination could not have been the subject of the June 2015 grievance, he does not appear to present a chronology of events from which retaliation may plausibly be inferred.

If the live complaint only included bald assertions of retaliation and the year-and-a-half period between the adverse employment action Joshua Balderas alleges he suffered and his prior participation in protected activities, his claims would fall prey to Rule 12(b)(6) as Defendants suggest. "[C]ases that accept *mere* temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (emphasis added). Indeed, the Supreme Court held in *Clark* that an adverse employment action taken 20 months after engagement in protected activity "suggests, by itself, no causality at all." *Id.* Thus, standing alone, the year-and-a-half gap between Joshua Balderas's alleged protected activities and his November 2016 termination would likely be too great to show the "very close" temporal proximity needed to establish causation.[4]

---

[4] *See, e.g.*, *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (five-month time period insufficient by itself to make out prima facie Title VII retaliation claim); *Sanders v. Leake Cty. Sch. Dist.*, 546 F. Supp. 2d 351, 360 (S.D. Miss. 2008) (plaintiff failed to establish

But here the live complaint includes factual allegations that go beyond mere conclusory assertions of retaliation or mere reliance on an inference of causation based solely on temporal proximity. The gravamen of the complaint is that all three of the Balderases suffered adverse employment actions *because* they engaged in protected activity. To that end, the Fourth Amendment Complaint provides sufficient details to allow the Court to reasonably infer that the individual board-member Defendants (but not SISD or Bandy and Iglehart-Hammons) were aware of the Balderases' alleged protected activities (including Joshua Balderas's) and sought to retaliate against all three of them because of these activities.

Specifically, according to the Fourth Amended Complaint, during the May 2015 school board election campaign all three of the Balderases "openly opposed" the Gonzales faction by making telephone calls to voters urging them to vote for opposing candidates and urging voters to do so at local political functions. Fourth Amend. Compl. ¶ 20. All three also allegedly carried signs at the designated polling areas showing their support for opposing candidates. *Id.* In response, the Gonzales faction, which includes the individual SISD board members (but not Bandy and Iglehart-Hammons)[5], allegedly "set about retaliating against those employees, such as the Plaintiffs, who had not supported their faction." *Id.* According to the Fourth Amended Complaint, "[d]uring the election campaign, the individual Defendants who were elected and those current individual Defendant board members with whom they are politically aligned *made numerous statements to community members . . . regarding their intent to terminate, demote and reassign employees including the Plaintiffs*." *Id.* ¶ 18 (emphasis added). The live complaint

close temporal proximity in First Amendment retaliation case where the superintendent recommended that plaintiff's contract not be renewed ten months after plaintiff engaged in the alleged protected activity and the school board issued its non-renewal decision a few months later).

[5] The live complaint does not allege that either Bandy or Iglehart-Hammons were part of the Gonzales faction.

further alleges that "SISD Board Member Loren Brewer, prior to the elections, informed Plaintiff Leo Balderas that Brewer had been told that the *Gonzales faction was going to target the Balderas family if they won*." *Id*. (emphasis added). Moreover, the live complaint continues, "Plaintiffs Leo Balderas and Theresa Balderas received numerous phone calls from community members who advised them that if [sic] the candidates who were opposed to Superintendent Vela also wanted to *terminate the Balderas family from SISD*." *Id*. (emphasis added). These factual allegations, if proven, outline a retaliatory motive that shows the required causal connection between the protected activity of all three of the Balderases and the alleged adverse employment actions they suffered. Accordingly, Joshua Balderas, along with Theresa and Leo Balderas, have pled sufficient facts for the Court to reasonably infer that the individual SISD board-member Defendants were aware of the Balderases' alleged protected activities and were motivated by those activities when imposing the adverse employment actions. But for the reasons discussed in the municipal-liability analysis above, Joshua Balderas has not sufficiently pled a plausible causation theory as to SISD. Joshua Balderas has failed to plead that SISD even knew that he engaged in protected activities or participated in his termination.

Further, none of the allegations in the complaint provide a connection between Joshua Balderas's protected activities and any action taken by interim superintendents Bandy and Iglehart-Hammons. Although Joshua Balderas complains that the individual board-member Defendants directed Bandy and Iglehart-Hammons to terminate him, Fourth Amend. Compl. ¶ 29, he does not allege that retaliation for the exercise of his First Amendment rights was a "substantial or motivating factor" in Bandy and Iglehart-Hammons' actions. *Pierce*, 37 F.3d at 1149. Instead, the *sole* motivating factor for Bandy and Iglehart-Hammons' actions, according to live complaint, was to curry favor with the board for purposes of securing a permanent

superintendent position. *See* Fourth Amend. Compl. ¶ 29. The live complaint also fails to allege that Bandy and Iglehart-Hammons were part of the Gonzales faction or otherwise shared in the faction's alleged retaliatory agenda. Nor does Joshua Balderas allege any facts in the live complaint from which the Court could reasonably infer that Bandy and Iglehart-Hammons were aware of the Balderases' protected activities or the Gonzales faction's alleged intent to retaliate because of them. The District Court's prior admonishment that the Balderases needed "to plead factual matters showing a causal link between a protected activity and the adverse employment outcomes they allege followed" put the Balderases on notice concerning this issue. Dkt. No. 9 at 10. For all these reasons, and also because Joshua Balderas cannot overcome Bandy and Iglehart-Hammons's assertions of qualified immunity or SISD's assertions of municipal liability discussed above, Joshua Balderas's First Amendment retaliation claims against Bandy and Iglehart-Hammons and SISD should be dismissed.

## IV.   Conclusion

For the reasons discussed above, it is recommended that Defendants' 12(b)(6) Motion to Dismiss Plaintiffs' Fourth Amended Original Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, Dkt. No. 19, be **GRANTED IN PART AND DENIED IN PART** as follows:

1) All claims asserted by Joshua Balderas against Defendant Southside Independent School District and Defendants Mary Bandy and Melonie Iglehart-Hammons, in their individual capacities, should be **DISMISSED**. Joshua Balderas is the only plaintiff to assert claims against Bandy and Iglehart-Hammons, and, therefore, Bandy and Iglehart-Hammons should be **DISMISSED** as defendants in this action.

2) Theresa and Leo Balderas's claims against Defendant Southside Independent School District should survive the Motion to Dismiss.

3) Theresa, Leo, and Joshua Balderas's claims against SISD board members Julian de la Rosa Gonzales, Johnny Cantu, Jr., Manuel Sandoval, Jr., and Kenneth Bouldin, Jr., in their individual capacities, should survive the Motion to Dismiss.

In light of these recommendations, **IT IS ORDERED THAT** the stay previously imposed in this case, Dkt. No. 34, is hereby lifted. Within **seven (7) days** from this Order, the parties shall confer and submit joint proposed scheduling recommendations to govern this action from this point forward.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to

timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

      **IT IS SO ORDERED**.

      SIGNED this 14th day of February, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE